The Honorable Susan Shulte State Representative 18 Sunbeam Circle Cabot, AR 72023-2000
Dear Representative Schulte:
I am writing in response to your request for my opinion on the following question concerning Ordinance No. 25 of 2004 of the City of Cabot, which establishes certain procedures in connection with the city's zoning ordinance and subdivision regulations:
 Is the Cabot Ordinance No. 25 of 2004 legal and does it supersede the other rules and statutes or do they keep the legal standing of this situation?
RESPONSE
It is my opinion that the Ordinance is likely subject to challenge to the extent it provides for the City Council to take action on matters that have been assigned by statute to the Board of Adjustment. The City Council may, however, in my opinion lawfully establish procedures for its review of the Planning Commission's action in administering the City's subdivision regulations.
It will be helpful to review the Ordinance and the referenced "rules and statutes" before discussing the basis for these conclusions. The Ordinance first states, in Section 1, that "the City Council is the sole authority for granting or denying any type of waiver or variance for any type of requirement of the city subdivision regulation or the city zoning ordinance."[1] Sections 2 and 3 then address procedures for initial presentation of all requests for waivers or variances to the Planning Commission, "whether acting as the Planning Commission or Board of Adjustments."[2] The Planning Commission must vote either to disapprove the request or to recommend to the Council that the request be approved. If the request is disapproved, the requester may appeal to the Council. Pursuant to Sections 4 and 5, the City Council must act on all requests for waivers or variances, both those that are recommended for approval and those that are appealed following disapproval by the Planning Commission. The Council may approve, disapprove, modify or return the request to the Commission for further hearing. The Ordinance concludes in Section 5 by providing that "[w]aivers or variance requests will be approved by the adoption of an ordinance."
Turning to the "rules and statutes" referenced in your question, you have provided what appears to be an excerpt from the Cabot Board of Adjustment rules and regulations, Section F of which states:
 Any person or persons, or any board, taxpayer, department, board or bureau of the City aggrieved by any decision of the Board of Adjustment may seek review by a court of record of such decision, in the manner provided by the laws of the State of Arkansas. [Emphasis added.]
 You have also provided a copy of A.C.A. § 14-56-416, the zoning statute; and you have specifically noted that section which provides that decisions of the Board of Adjustment with respect to enforcement and application of the zoning ordinance "shall be subject to appeal only to a court of record having jurisdiction." Id. at subsection (b)(2)(B)(ii).
With this background in mind, I will discuss the basis for the summary conclusions above.
First, regarding the legality of Ordinance No. 25 with respect to "requests for "waivers or variances to the . . . Board of Adjustments[,]" it is my opinion that the Ordinance is likely subject to challenge to the extent it provides for City Council review of and action on requests that have been submitted to the Board of Adjustment under the zoning ordinance. In my opinion, such review is not within the City's zoning powers, which derive solely from enabling legislation.
At common law, the property rights of the landowner included the right to occupy his land as he saw fit. In Arkansas, the enabling authority for limiting that right by zoning is statutory. Osborne v. City of Camden301 Ark. 420, 421, 784 S.W.2d 596 (1990); Taggart v. City of Augusta,278 Ark. 570, 647 S.W.2d 458 (1983). It is well established that cities in Arkansas have no inherent zoning authority and that their powers in this regard are derived solely from state legislation. Id. The legislation is contained in Act 186 of 1957 (codified at A.C.A. § 14-56-401 et seq.), a "comprehensive act" providing for the creation of a planning commission, zoning, and subdivision control. City of Little Rock v. Leawood Prop.242 Ark. 451, 453, 413 S.W.2d 877 (1967). With regard to zoning, the relevant statute is A.C.A. § 14-56-416, which authorizes a zoning ordinance after a planning commission has adopted and filed a land use plan for the city. Id. at subsection (a)(1). Particularly pertinent to your question is the following language of subsection (b) regarding a zoning board:
 The [zoning] ordinance shall provide for a board of zoning adjustment,
which may either be composed of at least three (3) members, or the [planning] commission as a whole may sit as the board of zoning adjustment.
A.C.A. § 14-56-416(b)(1) (emphasis added).
The statute is clear in mandating the existence of a board of adjustment. Accord City of Paragould v. Leath, 266 Ark. 390, 392,583 S.W.2d 76 (1979). The statute further establishes the functions of the board, addresses its procedures, and provides for review of its decisions as follows:
 (b)(2) The board [of zoning adjustment] shall have the following functions:
 (A) Hear appeals from the decision of the administrative officers in respect to the enforcement and application of the ordinance, and may affirm or reverse, in whole or in part, the decision of the administrative officer;
 (B) (i) (a) Hear requests for variances from the literal provisions of the zoning ordinance in instances where strict enforcement of the ordinance would cause undue hardship due to circumstances unique to the individual property under consideration, and grant such variances only when it is demonstrated that such action will be in keeping with the spirit and intent of the provisions of the ordinance.
 (b) The board shall not permit, as a variance, any use in a zone that is not permitted under the ordinance.
 (c) The board may impose conditions in the granting of a variance to insure compliance and to protect adjacent property.
 (ii) Decisions of the board in respect to the above shall be subject to appeal only to a court of record having jurisdiction.
 (3)(A) The board shall establish regular meeting dates, adopt rules for the conduct of its business, establish a quorum and procedure, and keep a public record of all findings and decisions.
 (B) Each session of the board shall be a public meeting with public notice of the meeting and business to be carried on published in a newspaper of general circulation in the city, at least one (1) time seven (7) days prior to the meeting.
 (c) The ordinance shall be observed through denial of the issuance of building permits and use permits.
A.C.A. § 14-56-416 (Repl. 1998).
With regard, specifically, to the appeal of zoning board decisions, reference must also be made to A.C.A. § 14-56-425, which was added by a 1965 amendment to Act 186 of 1957. See Acts 1965, No. 134. This statute provides:
 In addition to any remedy now provided by law, appeals from final action taken by the administrative and quasi judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury.
A.C.A. § 14-56-425 (Repl. 1998).[3]
Although my research has yielded no case directly on point, I believe a court faced with the issue would likely conclude that this statutory scheme leaves no room for a city council to enact legislation, such as Cabot Ordinance No. 25 of 2004, providing for city council action on requests for "variances" or "waivers" that have been decided by a zoning board. The General Assembly has designated the zoning board as the entity to administer the zoning ordinance, and it has detailed the board's functions and various related procedural matters. It has also provided for remedy by judicial appeal if the claim is that the zoning board made the wrong decision. See City of Paragould v. Leath, supra.
Significantly, as illustrated by Leath, this judicial appeal remedy extends to the city itself. In Leath, the Arkansas Supreme Court rejected an effort by the City Council of Paragould to enjoin, through chancery proceedings, an order of its Board of Zoning Adjustment reinstating a building permit that was originally issued, then revoked by the City's building inspector. 267 Ark. at 391. The court framed the issue as "whether the [City] can test the validity of a building permit issued by its own agency by collaterally attacking its correctness in an original injunctive proceeding in chancery court or is limited to testing it by appeal." Id. at 393. In determining that the City's remedy was by appeal, the Supreme Court noted that "[t]he existence of a Board of Adjustment is mandated by [A.C.A. § 14-56-416]." Id. It also emphasized that section of the statute providing that "[d]ecisions of the board of zoning adjustment in respect to the above shall be subject to appeal only to a court ofrecord having jurisdiction." Id. at 393, quoting A.C.A. §14-56-416(b)(2)(B)(ii) (emphasis original). The court stated that the City could not "bypass [this] provision. . . ." Id. It concluded by observing:
 Here the [City], through its building inspector, who had issued and then revoked appellees' permit, and its mayor presented testimony at the Board's hearing in opposition to a reinstatement of the permit. They were well aware of the Board's action and decision to reinstate the permit from which they could have appealed.
Id. at 394.
 Although the court was not faced with an ordinance such as Cabot's Ordinance No. 25, it is my opinion that this case portends the court's view of any other procedure, i.e., other than a judicial appeal, for reviewing decisions of a zoning board. I realize in this regard that the Cabot Ordinance may be interpreted to provide a separate review process with respect to the Board of Adjustment's decisions, such that the statutory right to appeal such decisions is arguably unaffected. Nevertheless, I must conclude that the Ordinance is subject to challenge because, as discussed above, the comprehensive zoning legislation establishes the zoning board as the administrative entity with respect to the zoning ordinance, and the judicial appeal as the procedure for obtaining review of the board's decisions. I interpret this legislation as effectively denying to the City any authority to adopt procedures requiring its approval, disapproval, or other action on requests that have been decided by the Board of Adjustment. Cf. Kollmeyer v. Greer, 267 Ark. 632, 637, 593 S.W.2d 29 (1980) (establishing the general principle that state legislation may be "so pervasive" as to preclude local regulation in the area).
A different result obtains, however, in my opinion, with regard to those requests that involve the City's subdivision regulations. Subdivision regulations fall within those "regulations to control development of land" that implement the master street plan pursuant to A.C.A. §14-56-417. The land development regulations control such matters as access to lots and parcels, extension of utilities, and subdividing of land into lots and blocks. See A.C.A. § 14-56-417(a)(2). These regulations may establish minimum requirements as to the information to be included on plats, subdivision design and layout, and standards for improvements at the developer's expense such as street paving, curbs and sidewalks, and street lighting and other amenities. Id. at subsection (b)(1).
The Planning Commission administers land development regulations. according to § 14-56-417. See subsections (a)(1) (stating that "the commission . . . shall administer, after approval of the legislative body, regulations controlling the development of land") and (b)(3) (regarding plat approval). But significantly, the Commission's powers in this regard can also be traced to the City Council. The statute that authorizes the creation of a planning commission (A.C.A. § 14-56-404), states in relevant part that "[t]he legislative body [i.e., the city council in a city with the mayor/council form of government] may conferon the commission the powers necessary to carry out the municipal plan."Id. at subsection (b) (emphasis added). This leads me to conclude that the Planning Commission's administrative powers with respect to municipal planning, including implementation of a master street plan through subdivision regulations, emanate in some measure from the City Council. This clearly distinguishes the legislation governing land development from that pertaining to zoning, for purposes of critiquing Cabot Ordinance No. 25. As indicated above, there is no suggestion in the zoning statute that the administrative powers of a zoning board of adjustment derive from the city's legislative body.
An additional distinguishing factor lies in the comparative lack of detail in § 14-56-417 with respect to the Planning Commission's procedures in administering the subdivision regulations. The statute simply requires the Commission's approval of plats, and declares that "[t]he regulations shall establish the procedure to be followed to secure plat approval by the commission." Id. at subsection (b)(3) and (4). Finally, and perhaps most significantly, there is no language similar to that in the zoning statute restricting the appeal of planning commission decisions "only to a court of record."
I believe it reasonably follows from these observations that the land development statute does not proscribe procedures such as those established by Ordinance 25 for administering the City's subdivision regulations. Specifically, it is my opinion that the City Council may establish procedures requiring its action on requests that have been submitted to and acted on by the Planning Commission under those regulations.
Finally, with regard to that part of your question pertaining to the Board of Adjustment rules, I cannot determine the effect of Ordinance No. 25 on these rules. This is not entirely clear from the face of the Ordinance, and consequently may be a question of interpretation. Such questions are not within the scope of an Attorney General opinion. I lack both the resources and the authority to undertake the necessary review in construing local measures to determine local legislative intent. The city attorney or other counsel to whom the city normally looks for legal advice is in a better position to answer such questions.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The Ordinance does not define a "waiver" or a "variance." A "variance" under the relevant Arkansas Code sections governing municipal planning and zoning is a means of avoiding strict enforcement of a city's zoning ordinance. See A.C.A. § 14-56-416(b)(2) (Repl. 1998). The term "waiver" is not used in the relevant statutes. It is thus difficult to ascribe a specific meaning to the "waiver" requests that are the subject of this Ordinance. Some insight may be gained from a review of the case law, which reveals references to requests for "waivers" from both zoning and subdivision requirements. See, e.g., Seb. Co. Assn. v. Ft. SmithZon. Adj. Bd., 265 Ark. 175, 577 S.W.2d 394 (1979) and Garrison v. Cityof North Little Rock, 332 Ark. 103, 964 S.W.2d 185 (1998). Accordingly, in addressing your question I will assume that the Ordinance refers to "variances" in the same sense as the zoning statute (A.C.A. §14-56-416), and that "waiver" requests may involve application of both the City zoning ordinance and the subdivision regulation.
[2] The "Board of Adjustments" presumably refers to the "board of zoning adjustment" as it is denominated under the zoning statute, A.C.A. § 14-56-416 (supra at n. 1), which provides that such board "may either be composed of at least three (3) members, or the [planning] commissionas a whole may sit as the board of zoning adjustment." Id. at subsection (b)(1).
[3] The statute originally also provided for an appeal de novo to circuit court of a city council's legislative action in zoning. See Acts 1965, No. 134, § 2. However, the Arkansas Supreme Court held this procedure unconstitutional, based on separation of powers (Ark. Const., art. 4) in Wenderoth v. City of Ft. Smith, 251 Ark. 342, 472 S.W.2d 74
(1971).